IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LARRY DAWSON, | CASE NO. 4:19-CV-00637 |
| Petitioner, | JUDGE J. PHILIP CALABRESE |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN BRANDESHAWN HARRIS, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

On March 22, 2019, Petitioner Larry Dawson, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). Respondent Brandeshawn Harris, in her capacity as Warden of the Trumbull Correctional Institution (hereafter "the State"), filed an Answer/Return of Writ on August 1, 2019. (ECF #7). On December 6, 2019, Mr. Dawson filed a Traverse to Return of Writ. (ECF #13). The State filed a Reply to Mr. Dawson's Traverse on March 5, 2020. (ECF #14). Then, on January 2, 2020, Mr. Dawson filed a Response to the State's Reply. (ECF #15).

Also, on September 11, 2019, Mr. Dawson filed a motion to expand the record. (ECF #10). The State oppos that request. (ECF #11). On January 23, 2020, Mr. Dawson's request to expand the record was denied because "the documents and exhibits already filed by the [State] appear satisfactory to allow the court to make" the determination required under federal habeas corpus review. (ECF #16 at PageID 1688).

The District Court has jurisdiction over the Petition under § 2254(a). On March 22, 2019, pursuant to Local Rule 72.2(b)(2), this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation. (Non-document entry of March 22, 2019). The matter was reassigned to me on May 26, 2021, pursuant to General Order 2021-06. (Non-document entry of May 26, 2021).

For the reasons discussed below, I recommend the Petition be **DISMISSED**. I further recommend that Mr. Dawson not be granted a certificate of appealability.

### Factual Background

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir.), *cert. denied*, 571 U.S. 1077 (2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001), *cert. denied*, 535 U.S. 966 (2002). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

In its opinion affirming Mr. Dawson's convictions, the Ohio Seventh District Court of Appeals summarized the underlying facts as follows:

{¶ 2} Appellant and Rhea Stewart had one child, RayVon; the child was born September 8, 2011. Although Appellant and Stewart were not together, Appellant spent time with the child. On Saturday, December 8, 2012 Stewart took the 15 month old toddler to stay with Appellant for a couple days; the toddler was scheduled to stay at Appellant's house on 3031 Oregon Street, Youngstown, Ohio from Saturday December 8, 2012 through Thursday, December 13, 2012. Appellant lived with his girlfriend, Ashlee Artist, and her son, who was a couple months older than RayVon.

{¶ 3} Stewart described RayVon as a typical 15 month old who was walking and learning to talk. Both Appellant and Artist confirmed the toddler was walking. The

child's pediatrician also testified the toddler was developmentally a normal 15 month old.

{¶ 4} During the visit, Appellant was the child's primary caregiver. At approximately 3:00 pm on Wednesday, Artist called 911 requesting an ambulance because Appellant had found RayVon unresponsive in the crib and white foam was coming out of his nose and mouth. The 911 operator instructed them how to administer CPR and told them an ambulance was on the way.

{¶ 5} Officer Assad Chaibi of the Youngstown Police Department arrived on the scene prior to the ambulance. When he arrived, Appellant and Artist were outside the home. The officer described Appellant's demeanor as very odd for a father; he stated Appellant was not emotional and did not seem concerned. The officer found the toddler lying on a couch with a liquid substance coming out of his mouth and nose. The officer began administering CPR.

{¶ 6} Once the ambulance arrived, the paramedic, Kimberly Nosek, administered CPR. Upon asking Appellant questions about the toddler, she noted Appellant seemed unattached to the situation. She avowed she asked Appellant if the child had experienced any accidents, falls, or hit his head. Appellant responded no.

{¶ 7} The child was taken to St. Elizabeth's Health Center in Youngstown and then was flown to Akron Children's Hospital in Akron, Ohio. Dr. Vivek Malhotra, a pediatric intensivist at Akron Children's Hospital, testified when RayVon arrived at the hospital there was no evidence of clinical brain function. In examining his eyes, the doctor observed bilateral retinal hemorrhages, which is often found in shaken or abused children. The doctor testified the injuries RayVon had are typically seen in "very high impact injuries," such as high speed motor vehicle accidents or a child falling from a second story building onto concrete. RayVon died at the hospital on the morning of Thursday, December 13, 2012.

{¶ 8} That afternoon, Appellant and Artist were interviewed by Detective Sergeant Patton. The detective specifically asked, "Has the baby fallen lately, hit his head?" Appellant responded saying RayVon might have hit his head on the wall Monday. He described it as bumping his head on the drywall by sitting back real hard. Appellant stated the toddler laughed after bumping his head.

{¶ 9} Artist told the detective Appellant informed her RayVon fell down a few steps on Monday. She testified she did not see the fall; she was at work.

{¶ 10} An autopsy was performed by the Summit County Coroner's Office. Following the examination, the Chief Medical Examiner Dr. George Sterbenz determined the cause of death was craniocerebral blunt force trauma, and the manner of death was homicide. He testified there were multiple impacts to the back of the head causing a skull fracture and brain injury. He avowed this type of injury would result in immediate disability and quick death.

{¶ 11} Thereafter, Detective Patton asked the medical examiner if a fall down a couple of stairs could cause the injuries. He was told no, it could not happen from a fall.

{¶ 12} Appellant was indicted on May 9, 2013 for felony murder in violation of R.C. 2903.02(B)(D), an unclassified felony; child endangering in violation of R.C. 2919.22(B)(1) [and] (E)(2)(d), a second-degree felony; and child endangering in violation of R.C. 2919.22(A)(E)(2)(c), a third-degree felony. Appellant pled not guilty.

{¶ 13} The case proceeded to a jury trial. The jury found Appellant guilty of all indicted charges. For purposes of sentencing, the child endangering convictions were found to be allied offenses of similar import, and accordingly, merged with the felony murder conviction. The trial court imposed the mandatory 15 years to life sentence for the felony murder conviction.

* * *

{¶ 29} Dr. George Sterbenz performed the autopsy. The cause of death listed in the report was craniocerebral blunt force trauma and stated the manner of death was "Homicide: Struck by other person(s)." He stated RayVon suffered from "severe multiple concussive forces to the head with [sic] severe huge fracture to the back of his head with a fracture extended right next to the brain stem." He explained there were multiple blows to the front of the head and multiple severe blows to the back of the head. Because there were no abrasions on the skin, the doctor reasoned the multiple blows to the head were from a nonabrasive surface, such as a fist without jewelry or pieces of movable furniture. According to Dr. Sterbenz, the type of injury the toddler sustained would result in immediate disability and quick death; the injury was not consistent with an accidental fall. In the doctor's opinion, the injury did not occur two days prior to death. Rather, it occurred minutes to hours before the child's cardiorespiratory arrest.

{¶ 30} Dr. Vivek Malhotra is a pediatric intensivist, works at the ICU at Akron Children's Hospital, and treated RayVon while he was at Akron Children's Hospital. He stated he examined the toddler's eyes and there was evidence of bilateral extensive retinal hemorrhages. He explained this finding is typically seen when children are abused. The hemorrhages are caused by the sheer force of shaking or hitting the child with a very blunt object. He stated after a massive skull fracture, like the one in this case, the child would not be laughing. The doctor was asked if there was a significant concern the toddler might have been abused. He responded yes and explained, "One, I could not explain from the history that I got from the father, who was watching this child, I could not get a[n] explanation as to why he had such severe swelling in the brain, blood in the brain, fracture of his brain. And, secondly, the retinal hemorrhages was my other concern that are very, very classic for patients who have child abuse."

4

{¶ 31} Artist and Appellant's statements and testimony indicated Appellant was with the toddler on December 12, 2012.

{¶ 32} Although there are no eye witness accounts or statements as to what exactly caused RayVon's injuries, the above testimony provides sufficient evidence for the felony murder charge to go to the jury. It was undisputed the toddler was under eighteen years of age. It is also undisputed the toddler was solely in Appellant's care prior to death. When considering both Dr. Sterbenz and Dr. Malhotra's testimony there is evidence that within hours of the child's death, the child was abused, which resulted in serious physical harm to the child and ultimately death. The testimony also suggests Appellant acted recklessly in abusing and ultimately causing the child's death.

\* \* \*

{¶ 38} According to Appellant, after taking the child home on Saturday night, Appellant gave RayVon a bath and put him to bed. On Sunday, Appellant, Artist, and the two kids were at the house watching television. On Monday, Appellant watched both RayVon and Artist's son. Appellant testified on Monday evening, while he was making dinner, RayVon was in the living room on the couch. Appellant would check on the child every couple minutes and at one point RayVon was no longer on the couch but was lying on the landing of the steps. These were steps for the second floor and the landing was located in the living room. He avowed the child laughed and seemed okay. Although he did not see the child fall or bump his head, Appellant checked him over, and contacted Stewart, Artist, and his mom about the incident. Appellant testified on Tuesday he took the child to his sister's house so he could go for a job interview. He stated the child was sleeping a lot that day. On Wednesday, Artist got the kids up around 10:00 a.m. because her son had a dentist appointment. She took RayVon out of the crib he shared with her son, and walked him into her and Appellant's bedroom where he climbed into bed with Appellant and fell back asleep. Appellant testified they woke up at noon. The child had a sippy cup of milk and cereal bar and they watched a movie. The child fell back asleep around 1 p.m., and Appellant put him back in the crib. While the child was asleep Appellant took a shower and got dressed. He then heard RayVon "gasping," "taking deep breaths." Appellant checked on the child, and the child was unresponsive. Artist arrived at house and called 911.

{¶ 39} The 911 call was played for the jury. The 911 call was made at 3:04 p.m. on December 12, 2012. The operator instructed Artist on how to administer CPR. In the background one can hear Appellant say he already attempted CPR, and the child was not responding. The operator indicated an ambulance was in route. At 3:13 p.m. Artist called 911 again because the ambulance had not arrived. Shortly after that Officer Assad Chaibi arrived on the scene.

{¶ 40} Officer Chaibi testified that when he arrived Appellant and Artist were outside and the toddler was lying on the couch. He immediately started CPR and when the ambulance arrived, the paramedic, Kimberly Nosek, took over.

{¶ 41} As aforementioned, RayVon was taken to St. Elizabeth's Hospital in Youngstown and then flown to Akron Children's Hospital in Akron. The child died on December 13, 2012 at Akron Children's Hospital. Following the child's death, Appellant was interviewed by Detective Sergeant John Patton. The interview was played for the jury.

{¶ 42} During the interview Appellant was asked if RayVon had fallen or bumped his head. Appellant responded that on Monday or Tuesday the child had sat back "real hard" and bumped his head on a wall at the bottom of the steps. Appellant stated the wall was dry wall. He explained the child laughed after bumping his head and was alright. Appellant denied hitting the child.

{¶ 43} Artist testified RayVon fell down the steps about two days before he died. She did not see the fall; Appellant told her it happened. She physically checked RayVon after she got home from work and he seemed fine.

{¶ 44} Detective Sergeant Patton contacted Dr. Sterbenz, who performed the autopsy, and asked if a fall could have been the cause of death. Dr. Sterbenz indicated the death could not have been caused from falling down steps. Detective Sergeant Patton did not pursue the theory that the death was caused by an accidental fall because of the coroner's statement.

{¶ 45} At trial, Dr. Janice Ophoven, a pediatric forensic pathologist, and Alan Dibb, a biomechanical engineer, testified for the defense. Considering RayVon's height and weight, Dibb was asked whether falling down a couple of steps could have caused the injuries RayVon sustained. Biomechanical engineering applies the principles of mechanical engineering to determine how much force causes an injury to the human body. He testified biomechanical studies have demonstrated the pediatric skull can fracture at impact heights around 32 inches onto carpeted and padded surfaces. He opined, to a reasonable degree of scientific certainty, RayVon's injuries were consistent with "a mechanism of falling backwards and a direct impact to the back of the head." On cross-examination, he admitted his opinion was based on the assumption RayVon was "standing on a couple of steps and fell backwards." He made this assumption because no one saw the child fall.

{¶ 46} Dr. Janice Ophoven, based on Dibb's report, testified the skull fracture is consistent with a fall; "a fall from the stairs could have resulted in the skull fracture that ultimately lead to his cardiac arrest and death." She disagreed with Dr. Sterbenz's conclusion that there were multiple impacts to the back of the skull. She concluded a single impact caused the fracture; there was no evidence of multiple impacts. She also disagreed with him about when the injury occurred in relation to death. She indicated it could have happened 48 to 72 hours prior to death. She testified given

the brain swelling, there was survival for a period of time after the injury. Children who are hurt and die immediately after do not have brain swelling because brain swelling occurs over time; brains of children who died immediately look perfect because there is no time for brain swelling. She stated brain swelling peaks at 48 to 72 hours. She likewise disagreed that retinal hemorrhaging was an indication RayVon was abused. Dr. Ophoven testified there could be at least five reasons why there was bilateral retinal hemorrhaging in this case. One could be impact trauma, another could be brain swelling, a third could be a clotting abnormality, a fourth could be lack of oxygen, and a fifth could be CPR. She indicated the bilateral retinal hemorrhaging has no value in interpreting what did or did not happen at the residence. Given all the evidence, she opined RayVon was not abused and his death was caused by an fall down a couple of steps.

*State v. Dawson*, 91 N.E.3d 140 (Ohio Ct. App. 2017) (internal record citations omitted), *appeal not allowed*, 90 N.E.3d 948 (Ohio 2018) (table).

## PROCEDURAL HISTORY

### State Court Conviction

On May 9, 2013, Mr. Dawson was charged in a three-count indictment returned by a Mahoning County grand jury. (ECF #7-1 at PageID 101-02). The charges were as follows:

- **Count 1**: Murder, in violation of Ohio Rev. Code §§ 2903.02(B) and (D);

- **Count 2**: Child endangering, in violation of Ohio Rev. Code §§ 2903.02(B)(1) and (E)(2)(d); and

- **Count 3**: Child endangering, in violation of Ohio Rev. Code §§ 2919.22(A) and (E)(2)(c).

(*Id.*).

Trial began on June 22, 2015 in the Mahoning County Court of Common Pleas. (ECF #7-1 at PageID 134). On June 29, 2015, the jury returned a verdict of guilty on Counts 1, 2, and 3. (*Id.* at PageID 135-36). Additionally, as to Counts 2 and 3, the jury returned an additional finding of serious physical harm. (*Id.*)

7

Sentencing took place on July 8, 2015. (ECF #7-1 at PageID 161). After hearing from the State and counsel Mr. Dawson, along with statements on behalf of the victim's family and on behalf of Mr. Dawson, the trial court pronounced sentence. (*Id.*). As set forth in the Judgment Entry of Sentence:

> The Court considered the record, oral statements and the principles and purposes of sentencing under Ohio Revised Code§ 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code§ 2929.12. The Court finds that Defendant is not amenable to a community control sanction and prison is the only sanction consistent with the principles and purposes of sentencing that does not place an unreasonable burden on the State and Local resources.

> Defendant had previously been found Guilty by a Jury to Count One, Murder, a violation of ORC §2903.02(B)(D), an unclassified Felony, Count Two, Child Endangering, ORC §2919.22(B)(l)(E)(d), a Felony of the 2nd Degree, and Count Three, ORC §2919.22(A)(E)(2)(c), a Felony of the 3rd Degree.

> On Count One, the Court imposes the mandatory sentence of Fifteen (15) years to Life served at the Lorain Correctional Institution, Grafton, Ohio. Counts Two and Three are found to be allied offenses of similar import, and therefore merge with Count One for the purpose of sentencing. Credit of three hundred ninety-nine (399) days for time already served shall be applied plus any additional time awaiting conveyance.

(*Id.* at PageID 161-62).

**Direct Appeal**

On July 14, 2015, Mr. Dawson filed a Notice of Appeal to the Ohio Seventh District Court of Appeals. (*Id.* at PageID 163). Through new counsel, he filed his Merit Brief of the Appellant on July 1, 2016, asserting four assignments of error, as follows:

> **First Assignment of Error:** Using child endangerment as a predicate offense for felony murder violates the due process clause of the U.S. Constitution.

> **Second Assignment of Error:** The State submitted insufficient evidence to support a conviction.

> **Third Assignment of Error:** The jury returned a verdict against the manifest weight of the evidence.

8

**Fourth Assignment of Error:** Multiple instances of error, if not reversible on their own, render this case reversible on a theory of cumulative error.

(ECF #7-1 at PageID 179-80). The State filed its Answer Brief on October 24, 2016. (*Id.* at PageID 196). Mr. Dawson did not file a Reply Brief. On May 23, 2017, the Seventh District issued its Decision and Journal Entry, affirming the trial court's judgment and sentence in all respects. (*Id.* at PageID 245; *see also State v. Dawson*, 91 N.E.3d at 152.

On July 6, 2017, Mr. Dawson filed a Notice of Appeal in the Ohio Supreme Court, seeking a discretionary jurisdictional appeal on the basis that the case was "a Case of Great Public Interest and/or General Interest that Involves a Substantial Constitutional Question." (*Id.* at PageID 255; *see also* Ohio Sup. Ct. R. Prac. 5.02(A)(3)). His Memorandum in Support of Jurisdiction asserted two Propositions of Law, as follows:

**Proposition of Law I:** Using child endangerment as a predicate offense for felony murder violates the due process clause of the U.S. Constitution.

**Proposition of Law II:** If the government fails to adduce proof of any kind that a defendant did and/or failed to do anything relative to the care of his child and/or as to when the child suffered the injury(ies) that caused her death, the government fails to provide sufficient evidence to support a conviction of felony murder by child endangerment.

(*Id.* at PageID 259, 261). The State waived filing a Memorandum in Opposition to Jurisdiction. (*Id.* at PageID 265). On January 31, 2018, the Ohio Supreme Court declined to accept Mr. Dawson's appeal. (*Id.* at PageID 266; *State v. Dawson*, 90 N.E.3d 948 (Ohio 2018) (table)).

Mr. Dawson did not file a petition for certiorari in the United States Supreme Court. The deadline for doing so was 90 days after the Ohio Supreme Court entered its judgment, *see* Sup. Ct. R. 13, or May 1, 2018. On March 22, 2019, Mr. Dawson's Petition was docketed in this matter, showing that he deposited it in the prison mailbox on March 19, 2019. (ECF # 1 at PageID 1; ECF

#1-5 at PageID 42). Thus, he timely commenced this proceeding. *See* 28 U.S.C. § 2244(d) (imposing a one-year limitations period "for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court"). The State acknowledges Mr. Dawson's Petition was timely filed. (ECF #7 at PageID 64).

## FEDERAL HABEAS CORPUS

Mr. Dawson's Petition, filed *pro se* in this Court, sets forth four grounds for relief, as follows:

**First Ground**: Using child endangerment as a predicate offense for felony murder violates the due process clause of the U.S. Constitution.

**Second Ground**: The State submitted insufficient evidence to support a conviction.

**Third Ground**: The jury returned a verdict against the manifest weight of the evidence.

**Fourth Ground**: Multiple instances of error, if not reversible on their own, render this case reversible on a theory of cumulative error.

(ECF #1 at PageID 6, 8, 9). Mr. Dawson requests this Court grant the Petition, vacate his convictions, and order either his immediate release or a new trial. (ECF #1 at PageID 16).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Dawson's petition for writ of habeas corpus. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams*, 529 U.S. at 412. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam). A state-court decision is an unreasonable determination of the facts only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). A petitioner bears the burden to rebut the state court's factual findings "by

clear and convincing evidence." 18 U.S.C. § 2254(e)(1). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal just systems," not a substitute for ordinary error correction through appeal. *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

## JURISDICTIONAL ISSUES

### Procedural Default

Principles of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure." *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

> When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless,* 459 U.S. 4 (1982). Moreover, failure to

12

present a claim to the highest state court deprives a federal court hearing a habeas petition of jurisdiction on that issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001).

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule.

> Second, the federal court must determine whether the state courts actually enforced the state procedural sanction—that is, whether the state courts actually based their decisions on the procedural rule.

> Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim....

> Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)), *cert. denied*, 536 U.S. 947 (2002).

**Federal Habeas Claims Based on Alleged Errors of State Law**

A court must also confirm it has jurisdiction over a petitioner's claims for purposes of habeas corpus review. AEDPA establishes two jurisdictional prerequisites for federal habeas corpus review of state convictions. 28 U.S.C. § 2254(a). First, the petitioner must be in state custody. *Id.* Second, the petitioner must challenge the legality of custody on the ground it is, or was imposed, "in violation of the Constitution or laws or treaties of the United States." *Id.* Indeed, "[t]he writ of

habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ( "A claim based *solely* on an error of state law is not redressable through the federal habeas process.") (emphasis original).

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)), *cert. denied*, 552 U.S. 1281 (2008); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). As pertinent here, "[f]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (citing *Patterson v. New York*, 432 U.S. 197, 202 (1977)). A petitioner bears the burden of proving "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

## LAW AND ANALYSIS

### First Ground for Relief

As his First Ground for Relief, Mr. Dawson's Petition alleges as follows:

The petitioner states that under the murder conviction with the endangering of children used as a predicate, it violates the due process due to the fact that the petitioner had no intent nor culpability in the death of his child as presented by the State. Petitioner provided expert testimony by Dr. Ophaven, (a pediatric forensic pathologist) and expert testimony by Alan Dibb, (a biomedical engineer) testifying the cause of death was not directly caused by the petitioner.

14

(ECF #1 at PageID 6). In his Traverse, he acknowledges that with respect to this alleged violation, his trial counsel "failed to object . . . ." (ECF #13 at PageID 1645).

Respondent argues this claim was procedurally defaulted because it was not raised in the trial court. (ECF #7 at PageID 74). Respondent further contends that the Seventh District's decision, which reviewed this issue for plain error because of the lack of a contemporaneous objection, was not contrary to clearly established federal law. (*Id.*).

A review of the record fails to disclose any evidence suggesting this claim was raised before the trial court. In fact, the Seventh District expressly stated in its opinion: "Appellant did not raise the due process issue to the trial court." *State v. Dawson*, 91 N.E.3d at 144. This is a reasonable determination by the state court, and resulted in proper enforcement of the state court's procedural sanction of limiting reviewing for only plain error. *See Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005). Moreover, "[t]he Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice." *Jalowiec v. Bradshaw*, No. 1:03-cv-0645, 2008 WL 312655, at *23 (N.D. Ohio Jan. 31, 2008), *aff'd*, 657 F.3d 293 (6th Cir. 2011), *cert. denied*, 568 U.S. 828 (2012).

A habeas petitioner may secure review of procedurally defaulted claims if cause exists for the failure to follow state procedural rules, as well as actual prejudice from the alleged constitutional violation. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478,

15

488 (1986)). The habeas petitioner bears the burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). "An attorney's failure to preserve a claim before the state court [does] not constitute cause of excusing procedural default." *Johnson v. Wilson*, 187 F. App'x 455, 458 (6th Cir. 2006), *cert. denied*, 549 U.S. 1218 (2007). Therefore, the failure of Mr. Dawson's attorney to object at trial also does not provide cause to excuse the default. And, "[w]hen a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citing *Smith v. Murray,* 477 U.S. 527, 533 (1986)).

Alternatively, absent cause and prejudice, a habeas petitioner may "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The miscarriage of justice exception may be satisfied by submitting evidence showing that a constitutional violation has led to the conviction of one who is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393 (2004). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A claim of actual innocence must be supported by a showing of new, reliable evidence. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."); *Keith v. Voorhies*, No. 1:06CV2360, 2009 WL 185765, at *7 (N.D. Ohio Jan. 23, 2009) ("To succeed on a claim of actual innocence, a petitioner must offer new reliable evidence showing that a fundamentally unjust incarceration has occurred.") (cleaned up).

I find Mr. Dawson has not established any cause or prejudice that would excuse the procedural default. Nor do I find anything in his briefing to this Court that can fairly be said to

16

constitute his assertion of actual innocence, accompanied by reliable new evidence supporting that assertion and demonstrating that his imprisonment is fundamentally unjust. Finally, I note that when Mr. Dawson presented this argument to the Seventh District, he did not frame it as a violation of federal law. (*See* ECF #7-1 at PageID 184-87).[1] This is insufficient to preserve the issue for review by this Court. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (noting that to exhaust a claim, it must be "presented to the state courts under the same theory in which it is later presented in federal court"). For all of these reasons, I conclude Mr. Dawson's First Ground for Relief is procedurally defaulted.

Even if not defaulted, this claim fails on its merits. Mr. Dawson's argument rests on the proposition that a felony-murder conviction based on an underlying offense of child endangering is unconstitutional because it relieves the State of having to prove any requisite *mens rea*. (ECF #13 at PageID 1646). He further posits that a felony-murder conviction based on child endangering is improper, because for any murder conviction to stand, "there must be a required and proven motive for malice." (*Id.* at PageID 1648).

Mr. Dawson's argument to this Court on this issue tracks the same argument made to the Seventh District in his post-conviction appeal. That Court found no merit to the claim, explaining as follows:

> {¶ 19} Appellant was convicted of felony murder in violation of R.C. 2903.02(B). That statute provides, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section

---

[1]        The only federal law cited in support of Mr. Dawson's first assignment of error to the Seventh District was *Morissette v. United States* for the colorful, yet extra-legal, proposition (first advanced by Justice Oliver Wendel Holmes in *The Common Law*) that "[e]ven a dog distinguishes between being stumbled over and being kicked." 342 U.S. 246, 252 n.9 (1952). (ECF #7-1 at PageID 184).

2903.03 or 2903.04 of the Revised Code." R.C. 2903.02(B). Appellant was found guilty of R.C. 2919.22(B)(1)(E)(d), second-degree felony child endangering. R.C. 2901.01(A)(9) defines an offense of violence to include a violation of R.C. 2919.22(B)(1). Consequently, child endangering can constitute the predicate offense for felony murder.

{¶ 20} Furthermore, R.C. 2903.02(B) has consistently been found to not violate due process rights. *State v. Hayden*, 11th Dist. No. 99-L-037, 2000 WL 973413 (July 14, 2000) (R.C. 2903.02[B] does not relieve the state of the burden of proving mens rea simply because the intent to kill is conclusively presumed so long as the state proves the required intent to commit the underlying felony); *State v. Pickett*, 1st Dist. No. C-000424, 2001 WL 1591318 (Dec. 14, 2001) (same); *State v. Collins*, 5th Dist. No. 2003-CA-0073, 2005-Ohio-1642, 2005 WL 774010 (same); *State v. Minifee*, 8th Dist. No. 91017, 2009-Ohio-3089, 2009 WL 1819493 (same); and *State v. Cherry*, 9th Dist. No. 20771, 2002-Ohio-3738, 2002 WL 1626105 (same). "Thus, the mens rea element for felony murder under R.C. 2903.02(B) is satisfied when the state proves the intent required for the underlying felony." *State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, 2012 WL 2463966, ¶ 17. *See also, Hayden, Pickett, Collins, Minifee* and *Cherry. Id.* at ¶ 23. "[T]he General Assembly has chosen to define felony murder in this manner, and the General Assembly is presumed to know the consequences of its legislation." *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 34.

{¶ 21} The Ninth Appellate District has specifically addressed the due process argument regarding felony murder and the predicate offense of child endangering. *Cherry*, 9th Dist. No. 20771, 2002-Ohio-3738, 2002 WL 1626105, ¶ 34-44. Our sister district held due process rights were not violated and concluded a conviction for murder based on a predicate felony with a mens rea of "recklessly" does not violate constitutional rights. *Id.* at ¶ 39. It reasoned:

> R.C. 2903.02(B) evidences a clear legislative intent to subject those who commit the most serious felonies to liability for murder, where commission of those felonies results in death. Where commission of child endangering in violation of R.C. 2919.22(B)(1) results in serious physical harm to the child victim, the violation is a felony of the second degree and thereby becomes included in the class of eligible R.C. 2903.02(B) predicate felonies. R.C. 2919.22(E)(2)(d); R.C. 2903.02(B). The consequence of this statutory scheme is to subject one who causes serious physical harm to a child through an act of reckless abuse to prosecution for murder, where the death of the child is a proximate result of such abuse.

> In light of the legislature's clear desire to punish under R.C. 2903.02(B) those who proximately cause the death of children by acts of reckless abuse, we find

no merit to Appellant's argument that his constitutional rights were violated by predicating his conviction on a felony with a mens rea of "recklessly."

*Id.* at ¶ 43–44.

{¶ 22} We agree. The due process argument raised in this assignment of error lacks merit. This assignment of error is meritless.

*State v. Dawson*, 91 N.E. 3d at 144-145.

Mr. Dawson does not explain how or why the Seventh District's analysis contravenes or is an unreasonable application of clearly established Supreme Court precedent. Further, as noted above, federal habeas corpus relief does not lie for errors of state law, and Mr. Dawson's claim here is grounded in state law. As a result, I recommend that the First Ground for Relief be dismissed.

**Second Ground for Relief**

Mr. Dawson's Second Ground for Relief challenges the sufficiency of the evidence supporting his conviction. His Petition alleges:

Where the Appellate courts' duty was to review the sufficiency of evidence to see whether the evidence admitted at trial, if believed would convicne [*sic*] the average mind of the defendant's guilty beyond a reasonable doubt. There is no proof in the record that the defendant did and/or failed to do anything relative to the care of this child and/or as to when the child suffered the injury(ies) [*sic*] that caused the child's death.

(ECF #1 at PageID 8).

The State concedes this challenge was properly exhausted in state court proceedings, but nevertheless maintains the decision is not contrary to or an unreasonable application of the law. (ECF #7 at PageID 79). In his Traverse, Mr. Dawson contends the Seventh District's review was flawed because it did not mention evidence presented by expert witnesses who testified on his behalf, and because "the evidence presented by the state's witnesses was insufficient to prove the

extent, nature and cause of the decedent's injuries, or that Petitioner was the source of the injuries leading to the death of the child." (ECF #13 at PageID 1651).

In an earlier order in this case, then-Magistrate Judge Ruiz outlined the law governing a sufficiency-of-evidence review, as follows:

> This court reviews a sufficiency of the evidence claim by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), *cert. denied*, 558 U.S. 1114 (2010). On habeas review, the court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute the court's judgment for that of the jury. *Brown*, 567 F.3d at 205 (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). This court "must defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* Moreover, attacks on witness credibility are challenges to the quality or weight of the evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002), *cert. denied*, 537 U.S. 1004 (2002) (citing *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984)).

> Here, although Dawson claims there was "no proof in the record" to support a finding of guilt (R. 1, PageID #: 8), the court of appeals identified specific evidence of all elements of the offenses. See R. 7-1, RX 20, PageID #: 234-235; *Dawson*, 91 N.E.3d at 146-147. In essence, Dawson contends that the trier of fact should have reached a different conclusion regarding what the evidence showed. Such an argument would require this court to reweigh the evidence, re-evaluate the credibility of witnesses, or substitute this court's judgment for that of the jury, which is not proper. *Brown*, 567 F.3d at 205. Rather, this court's role is to view the trial evidence in the light most favorable to the prosecution, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brown*, 567 F.3d at 205.

> The task of a habeas court is neither to re-try a case, nor "to upset state court judgments by substituting [its own] judgments or opinions." *Neace v. Edwards*, No. 02-4079, 2005 WL 1059274, at *6 (6th Cir. May 6, 2005) (citing *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)). Moreover, a federal habeas court is not "an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Group v. Robinson*, 132 F. Supp. 3d 954, 959 (N.D. Ohio 2015) (citing *Pinholster*). Federal district courts are not simply another level of "appellate tribunals to review alleged errors in state court judgments of conviction." *Baker v. Reid*, 482 F.Supp. 470, 471 (S.D. N.Y. 1979). Rather, the question before this federal habeas court is whether the state court decision was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2002).

(ECF #16 at PageID 1687-88).

Claims controlled by the *Jackson* standard face the high burden of two layers of judicial deference. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, the state court on direct appeal may set aside the jury's verdict on insufficient evidence only if no trier of fact could have agreed with the jury. *Id.* And second, the habeas court may only overturn if the state court decision was "objectively unreasonable"—it may not overturn simply because the federal court disagrees with the state court's result. *Id.* (internal quotations and citations omitted).

In rejecting Mr. Dawson's sufficiency-of-the-evidence argument, the Seventh District explained as follows:

> {¶ 25} As aforementioned, Appellant was convicted of felony murder, R.C. 2903.02(B), with child endangering, R.C. 2919.22(B)(1)(E)(2)(d), being the predicate offense. Felony murder, as defined by R.C. 2903.02(B), provides no person shall cause the death of another while committing a first or second-degree felony offense of violence. Child endangering as defined by R.C. 2919.22(B)(1) requires proof the offender abused a child under eighteen years of age. If the abuse results in serious physical harm to the child, the violation of R.C. 2919.22(B)(1) constitutes a second degree felony. R.C. 2919.22(E)(2)(d). Although not stated in the statute, the mens rea for endangering children is recklessness. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980), paragraph one of the syllabus. "Recklessness" is defined as a person who "with heedless indifference to the consequences, * * * disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).
>
> {¶ 26} Appellant contends the state did not offer facts demonstrating Appellant disregarded a known risk or abused the victim. He argues the facts of the case reveal the likelihood of the death being caused from a fall down a couple of steps. Furthermore, he asserts the state's theory is based on a res-ipsa-loquitur theory of liability; the toddler was in Appellant's care and therefore, the injuries are only attributable to Appellant.

{¶ 27} The state counters arguing it provided evidence of all elements of the offenses. It asserts it produced evidence Appellant abused the child, and the abuse was the proximate cause of death.

{¶ 28} The record indicates the state did provide evidence of all elements of the offenses. The autopsy report and testimony from Dr. George Sterbenz and Dr. Vivek Malhotra provided evidence of abuse and the manner of death.

{¶ 29} Dr. George Sterbenz performed the autopsy. The cause of death listed in the report was craniocerebral blunt force trauma and stated the manner of death was "Homicide: Struck by other person(s)." He stated RayVon suffered from "severe multiple concussive forces to the head with [sic] severe huge fracture to the back of his head with a fracture extended right next to the brain stem." He explained there were multiple blows to the front of the head and multiple severe blows to the back of the head. Because there were no abrasions on the skin, the doctor reasoned the multiple blows to the head were from a nonabrasive surface, such as a fist without jewelry or pieces of movable furniture. According to Dr. Sterbenz, the type of injury the toddler sustained would result in immediate disability and quick death; the injury was not consistent with an accidental fall. In the doctor's opinion, the injury did not occur two days prior to death. Rather, it occurred minutes to hours before the child's cardiorespiratory arrest.

{¶ 30} Dr. Vivek Malhotra is a pediatric intensivist, works at the ICU at Akron Children's Hospital, and treated RayVon while he was at Akron Children's Hospital. He stated he examined the toddler's eyes and there was evidence of bilateral extensive retinal hemorrhages. He explained this finding is typically seen when children are abused. The hemorrhages are caused by the sheer force of shaking or hitting the child with a very blunt object. He stated after a massive skull fracture, like the one in this case, the child would not be laughing. The doctor was asked if there was a significant concern the toddler might have been abused. He responded yes and explained, "One, I could not explain from the history that I got from the father, who was watching this child, I could not get a[n] explanation as to why he had such severe swelling in the brain, blood in the brain, fracture of his brain. And, secondly, the retinal hemorrhages was my other concern that are very, very classic for patients who have child abuse."

{¶ 31} Artist and Appellant's statements and testimony indicated Appellant was with the toddler on December 12, 2012.

{¶ 32} Although there are no eye witness accounts or statements as to what exactly caused RayVon's injuries, the above testimony provides sufficient evidence for the felony murder charge to go to the jury. It was undisputed the toddler was under eighteen years of age. It is also undisputed the toddler was solely in Appellant's care prior to death. When considering both Dr. Sterbenz and Dr. Malhotra's testimony there is evidence that within hours of the child's death, the child was abused, which

resulted in serious physical harm to the child and ultimately death. The testimony also suggests Appellant acted recklessly in abusing and ultimately causing the child's death.

{¶ 33} Admittedly, Appellant asserts the injuries and death were not caused from abuse, but rather from falling down a couple of steps. For purposes of sufficiency his argument does not negate the testimony from Dr. Sterbenz and Dr. Malhotra. This argument is a manifest weight argument and is addressed in the next assignment of error.

{¶ 34} Thus, considering the state's  evidence, there was sufficient evidence for the felony murder charge to go to the jury, and for it to decide whether the evidence proved beyond a reasonable doubt Appellant committed felony murder. This assignment of error is meritless.

*Dawson*, 91 N.E.3d at 145-47 (internal record citations omitted). Nothing in the foregoing contradicts or unreasonably applies clearly established Supreme Court precedent. Indeed, as noted in Mr. Dawson's Petition, this case amounted to a "battle of the experts and doctors." (ECF #1 at PageID 9). In the end, the jury credited the evidence offered by the State over that offered on behalf of Mr. Dawson. I find no basis to recommend the District Court grant habeas relief under such circumstances, and therefore recommend that the Second Ground for Relief be dismissed.

**Third and Fourth Grounds for Relief**

Mr. Dawson's Third Ground for Relief alleges his conviction was against the manifest weight of the evidence. (ECF #1 at PageID 9). In his Petition, he explains:

Here the Appellate Court had to review the entire case and should have seen that through the defenses' expert testimony of Dr. Ophaven and Alan Dibb. Where the State presented their expert witnesses at trial and the Appellate Court in their own decision in this stated (at ¶ 51) This case is a battle of the experts and doctors; each side presented a Plausible Theory. The jury lost its' way with its' verdict and a miscarriage of justice in finding the defendant guilty.

(*Id.*).

Mr. Dawson's Fourth Ground for Relief is that cumulative error requires reversal. (*Id.* at PageID 11). On this issue, his Petition avers as follows:

> There were numerous errors in the instant case, from the Court allowing into the record concerning two alleged prior incidents of child abuse with the defendant and the victim. Another cumulative error was when the defendant's relative had a conversation with tow (2) [*sic*] of the jurors. This should have triggered a mistrial at least. All of the errors created a tainted jury and denied the defendant a fair trial by right.

(*Id.*).

Neither of these arguments were presented in his Memorandum in Support of Jurisdiction to the Ohio Supreme Court. (*See* ECF #7-1 at PageID 254). As a result, both are procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (2001) (noting that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims"); *Mosley v. Petro*, No. 5:04CV726, 2006 WL 2640958, at *7 (N.D. Ohio Sept. 13, 2006) ("A petitioner procedurally defaults those claims that he fails to appeal to the Ohio Supreme Court.").

In addition, even if not defaulted, claims regarding the manifest weight of the evidence are grounded in state law and thus are not cognizable in federal habeas. *See, e.g.*, *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.) (stating that Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt), *cert. denied*, 464 U.S. 951 (1983). In *Nash v. Eberlin*, 258 F. App'x 761, 765 n.4 (6th Cir. 2007), however, the Sixth Circuit liberally construed a *pro se* habeas petitioner's manifest-weight-of-the-evidence claim to be a sufficiency-of-the-evidence claim. But, for the reasons already noted above, Mr. Dawson's

sufficiency-of-the-evidence challenge is without merit. Therefore, even if his manifest-weight challenge is treated as a sufficiency-of-the-evidence challenge, it fails.

Similarly, cumulative error is not a cognizable habeas claim. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (cumulative error not cognizable on federal habeas review because Supreme Court has not spoken on the issue). Even were such a claim cognizable, if the individual claims making up the cumulative error claim are procedurally barred or without merit, the cumulative error claim "must also fail." *Ramsey v. Phillips*, No. 20-3452, 2020 WL 9423257, at *3 (6th Cir. Nov. 4, 2020).

I also note that the Seventh District found no merit to Mr. Dawson's cumulative error argument, writing as follows:

> {¶ 55} Appellant references three harmless errors occurring during trial and argues these errors constituted cumulative error depriving him of a fair trial. The state disagrees and asserts Appellant has failed to show the alleged errors had the cumulative effect of depriving him of a fair trial.
>
> {¶ 56} Two of the alleged errors Appellant references are about testimony of bruises on RayVon that occurred a week or so prior to his death. Prior to trial, Appellant filed a motion in limine; it was seeking to prevent the state from offering evidence about two alleged prior instances of Appellant causing injury or handling the child roughly. The first instance occurred on November 30, 2012. There was a complaint from Stewart's neighbor that she saw a guy in a black car handle RayVon roughly by placing him in the car by his collar. The second instance occurred sometime in late November or early December. Stewart contacted police after RayVon came home from a visit with his father, and had scratches on his face, bruising on both sides of his face, and a split upper lip. The case was referred to Children's Services on December 3, 2012. Over the state's objection, the trial court granted the motion in limine.
>
> {¶ 57} The state recalled two of its witnesses for rebuttal, Rhea Stewart and Dr. Sterbenz. Stewart was recalled to testify RayVon had a bruise on his face when he went to Appellant's house on December 8, 2012 and this was an older bruise. It was during this testimony that the alleged nonreversible harmless error occurred. Stewart was asked whether RayVon had any marks on him when he went to Appellant's home on December 8, 2012. Tr. 1008. She stated he had a mark on his face. The state asked how long the child had the mark. Stewart replied, "maybe a couple days

prior to me dropping him off." Instead of stopping at that point, the state then asked, "What about—since November 30, is that when that mark —came to fruition?" Stewart responded yes. Appellant objected and moved for a mistrial arguing the ruling on the motion in limine prohibited the state from mentioning the November 30 date and referencing the alleged rough handling of RayVon.

{¶ 58} The state alleged it was using the testimony to dispute Dr. Ophoven's testimony that the bruise was caused by resuscitation and was not an old bruise.

{¶ 59} Upon reviewing the testimony it becomes clear the state did not have to use the November 30 date to make its point. Stewart testified the bruise was there prior to her dropping off RayVon. This disputed Dr. Ophoven's testimony that the bruise probably happened during resuscitation. It also reinforced Dr. Sterbenz's testimony that the bruise was an old bruise; Stewart's testimony may have helped increase Dr. Sterbenz's credibility. The state did not need to mention November 30 to make its point. Thus, by asking about November 30 specifically, the state's line of questioning could be seen as an attempt to get the November 30 alleged instance of rough handling before the jury.

{¶ 60} The second alleged harmless error is referred by Appellant as "a children services' investigation referencing the 'victim and his family.' " Appellant does not cite to the transcript where the children services' investigation was referenced. However, it appears he is discussing Dr. Ophoven's testimony where the trial court determined she opened the door to reference the children services' investigation for purposes of attacking her credibility. During her testimony she indicated there was no evidence the child was mishandled and that was something she considered in determining whether the death was caused by abuse or by an accidental fall. This testimony opened the door for questioning her on her knowledge of any prior mishandling incidents.

{¶ 61} Dr. Ophoven testified she reviewed a police report from November 30, 2012 and was aware of another reported incident being investigated. She stated it did not have anything to do with her evaluation. The state then asked if this was another incident of abuse of RayVon by Appellant. Appellant objected and the trial court sustained the objection. The testimony proceeded and Dr. Ophoven was asked about the bruises on RayVon's face and the children services' investigation regarding the bruises. Dr. Ophoven then clarified her earlier testimony to explain there was "no evidence of rough handling at the time of the postmortem." She indicated there was nothing to suggest the child had been abused when he came to the hospital.

{¶ 62} The third alleged instance of harmless error concerned a conversation Appellant's relative initiated with two jurors. Two jurors reported that while at lunch a relative of Appellant talked to them and told them, "My nephew is innocent. We are churchgoing people." They responded "thank you" and we cannot talk to you. Both jurors testified the relative started the conversation and they both had their

juror tags visible. The alternative juror joined them after the conversation and they told him about the discussion. After questioning by the trial court, the state, and defense counsel, all three jurors indicated the conversation did not affect them and did not impact their ability to make a fair decision.

{¶ 63} Appellant made no objection to the trial going forward; and, in fact, he stated he wanted it to go forward.

{¶ 64} Considering all three instances in conjunction with each other, this court concludes there is no reversible cumulative error. The reference to the children services investigation in Dr. Ophoven's testimony was not error. The door was opened by Dr. Ophoven. Any statements regarding prior abuse were objected to, and a response to the question was not permitted. Furthermore, the issue regarding the conversation with the jurors did not warrant the trial court granting a mistrial sua sponte. The jurors indicated they could decide the case fairly. Furthermore, Appellant clearly indicated he wanted the trial to go forward. Potentially harmless error occurred during Stewart's rebuttal testimony as it related to the November 30 date. However, one instance of harmless error does not amount to cumulative error.

{¶ 65} For those reasons, this assignment of error lacks merit.

*State v. Dawson*, 91 N.E.3d at 150-52 (internal record citations omitted). Again, nothing in this analysis of the record contravenes or is an unreasonable application of clearly established Supreme Court precedent.

For these reasons, Mr. Dawson's Third and Fourth Grounds for Relief must be dismissed.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, I recommend the Petition be

**DISMISSED**. I further recommend pursuant to 28 U.S.C. §2253 that Mr. Dawson not be granted

a certificate of appealability because he has not made a substantial showing that he was denied a

constitutional right.

Dated:  April 4, 2022

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). **Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl,* 928 F.3d 520, 530 (6th Cir. 2019). **Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). **Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green,* No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard,* 932 F.2d at 509). **The failure to assert specific objections may in rare cases be excused in the interest of justice.** *See United States v. Wandahsega,* 924 F.3d 868, 878-79 (6th Cir. 2019).